So Ordered.

Signed this 24 day of June, 2022.



_____

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

      DANIEL MCGUIRE

      and

      RITA MCGUIRE,                  Chapter 13

                                  Case No. 20-61183

                    *Debtors.*

_____

APPEARANCES:

Orville & McDonald Law, PC          *Zachary DeCurtis*
*McDonald Counsel for Debtor*
30 Riverside Drive
Binghamton, New York
13905

Mark W. Swimelar              *Mark W. Swimelar*
250 South Clinton
Street Suite 203
Syracuse, NY 13202

Honorable Diane Davis, United States Chief Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Before the Court is Trustee Mark W. Swimelar's ("Trustee") Objection to Claimed Exemption (the "Objection to Exemption," ECF No. 21) and related Objection to Confirmation of Plan (the "Objection to Confirmation," ECF No. 23) in Daniel McGuire ("Debtor Husband") and Rita McGuire's ("Debtor Wife") (collectively "Debtors") chapter 13 case. Trustee Swimelar objects to Debtor Wife claiming an inheritance as exempt pursuant to 11 U.S.C. § 522 (d)(5)[1] ("Inheritance") as having no basis in law. The Trustee also objects to confirmation of Debtors' proposed amended chapter 13 plan (ECF No. 26), and requests that confirmation be denied or conditioned on the Inheritance being paid into the plan as projected disposable income under 11 U.S.C. § 1325(b).

The Court first heard the matter at its regularly scheduled Utica motion term calendar on February 2, 2021. The Parties were then directed to submit simultaneous letter briefs by February 23, 2021, which they did (the "Trustee's Brief," ECF No. 29 and the "Debtors' Brief," ECF No. 31). On March 2, 2021, the Court heard oral argument and took the matter under advisement on that date.

### JURISDICTION

The Court has core jurisdiction over the parties and subject matter of these contested matters in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(A), (b)(2)(L) and (b)(2)(O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*, and will hereinafter be referred to as "§ (section number)." (2020).

## PROCEDURAL AND FACTUAL BACKGROUND[2]

Debtors filed a joint voluntary petition under chapter 13 of the Bankruptcy Code on November 10, 2020. (Petition. ECF No. 1.) On Schedule A/B of the petition, Debtors' list real property located at 3509 Georgia Street, Endicott, NY 13760 (the "Real Property") as joint property with a value of $68,127.00 and a mortgage held by Wells Fargo in the amount of $51,835.00. (Petition, 10, 20. ECF No. 1.) On Schedule C of the petition, Debtors claim an exemption in the Real Property in the sum of $17,000.00 pursuant to § 522(d)(1). (Petition, 16. ECF No. 1.) Schedule A/B also lists various personal property including a "[p]otential inheritance from [Debtor Wife's] late brother" in the amount of $10,000.00 (the "Inheritance") and bank accounts with total balances in the amount of $7,000 (the "Bank Accounts"). (Petition, 12-14. ECF No. 1.) Pursuant to § 522(d)(5), Debtor Wife claims an exemption of $10,000.00 in the Inheritance and both Debtors claim as exempt cash in the sum of $7,000.00 held in the joint Bank Accounts. 11 U.S.C. §§ 522(d)(1), (5). According to Official Form 122C-1,[3] Debtors qualify as below median income debtors such that their disposable income is determined under § 1325(b)(2). (Petition, 44-47. ECF No. 1.)

Debtors proposed amended plan filed on February 1, 2021, provides that they will make payments to Trustee in the total amount of $21,480.00 payable at $300.00 per month for the first two (2) months, then $360.00 per month for the remaining 58 months for a total of 60 months

---

[2] The facts of the case are drawn from the parties' submissions, oral arguments made during the motion calendar and the Court's docket.

[3] To determine their income, Debtors were required to file a Form 122C-1, "Statement of Current Monthly Income" ("CMI") wherein they calculated their average monthly income based on the six-month period preceding the petition date thereby identifying their CMI. Debtors did not include the Inheritance as part of their calculation of average monthly income. The median income for their state and size of household is $ 76,219.00, making Debtors in this case below median income debtors. As such, their expenses as listed on Schedule J of the petition must be "reasonably necessary to be expended ... for the[ir] maintenance and support ...." 11 U.S.C. § 1325(b)(2)(A)(i). On Form 122C-1, they list "total average monthly income" of $ 6,284.01, resulting in annualized income of $75,408.12. The Trustee did not object to the accuracy of Debtors' Form 122C-1. Further, under § 1325(b)(4), Debtors must commit to a three-year period. Debtors are proposing a five-year term.

with nonpriority unsecured creditors not separately classified receiving a 1% dividend on allowed claims. (Amended Plan. ECF No. 26.)[4]

## **ARGUMENTS**

In his Objection to Exemption, the Trustee states the Inheritance is not an allowed exemption. He provides no statutory authority or case law in support of his Objection to Exemption as to why § 522(d)(5) cannot be used by Debtor Wife to claim the Inheritance as exempt. In his Objection to Confirmation the Trustee argues that the Inheritance is property of the estate under §§ 541(a) and 1306(a) and further that it constitutes disposable income for purposes of confirmation. According to the Trustee, confirmation should be denied because the plan does not fund the Inheritance into the Plan in its entirety in accordance with § 1325(b)(1)(B). In support of his position, he argues that the majority courts hold that property claimed as exempt under § 522 nonetheless constitutes disposable income and should be funded into the plan for the benefit of creditors. *See, e.g., In re Adamson*, 615 B.R. 303, 311 (Bankr. D. Colo. 2020). In the alternative, the Trustee argues that should the Court find Debtor Wife properly used § 522(d)(5) to claim the Inheritance as exempt, Debtor Wife is only allowed to claim half of the value of the joint Bank Accounts as exempt, which limits the wildcard exemption available to her under § 522(d)(5) to $9,052.50.

Debtors agree the Inheritance is property of the estate and, to the extent the amount to be received exceeds the maximum exemption allowed Debtor Wife pursuant to the wildcard exemption, they will fund the excess into the plan as non-exempt proceeds. Debtors disagree, however, that the Inheritance is disposable income as defined under § 1325(b), because it is not an exempt asset that produces income or results in a stream of payments. Debtors ask this Court

---

[4] Debtors owe $181,160.18 in nonpriority unsecured debt, including $150,900.00 in student loan debt, and secured claims in the amount of $62,795.92.

to follow the minority line of cases that conclude that once property is exempted from property of the estate, the property is protected from distribution to creditors under § 522(c). Debtors specifically direct the Court's attention to several cases that look to whether an exempt asset produces income.

At the hearing held on March 2, 2021, Debtors advised the Court that the amount of the Inheritance to be received remained unknown, as the decedent's estate had not yet been administered. They estimate, however, that Debtor Wife will receive approximately $6,000.00, rather than the $10,000.00 listed on Schedule C when the petition was filed.

As a matter of first impression, the issues before this Court are as follows. First, the Court must determine whether Debtor Wife may use the "wildcard exemption" to claim the Inheritance as exempt. Notwithstanding the Court's determination regarding the first question, the Court must then determine whether the Inheritance is "projected disposable income," under §§ 101(10A), 1325(b)(1)(B), and 1325(b)(2) and must be funded into the Plan to the extent not reasonably necessary for Debtors' maintenance and support. The burden of proof at confirmation of a chapter 13 plan is a shifting one. *In re Powers*, 554 B.R. 41, 55 (Bankr. N.D.N.Y. 2016) (citing *McKinney v. McKinney (In re McKinney)*, 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014)). The party objecting to the plan bears the initial burden of presenting some evidence to support its position and, if satisfied, the burden shifts to Debtors to prove by a preponderance of the evidence that the requirements of § 1325 have been met. *Id.*

For the reasons explained more fully below, the Court holds that Debtor Wife may claim the Inheritance as exempt under § 522(d)(5) and that it is immunized from creditors' claims under § 522(c). The Court further holds that the Inheritance does not constitute disposable income as that term is used in § 1325(b). Instead, and to the extent the amount received by Debtor Wife

exceeds the allowed exemption, it must come into the Plan for the benefit of creditors under
§ 1325(a)(4).

## DISCUSSION

### A. The Exemption

With certain exceptions not applicable here, the commencement of a bankruptcy case creates an "estate" that initially is comprised of all legal or equitable interests of a debtor in property. *See* 11 U.S.C. § 541. Property of the estate in chapter 13 is different from property of a chapter 7 estate in that it includes not only any interest in property described in § 541(a) at the commencement of the case, but also all property acquired by the debtor after the commencement of the case under § 1306(a), including post-petition earnings from services performed by the debtor during the pendency of the chapter 13 case. *See* 11 U.S.C. §§ 541(a); 1306(a)(1), (2). Since Debtors agree the Inheritance is property of their chapter 13 bankruptcy estate, the Court will not address the case law cited by the Trustee in support of this argument.

To prevent distribution of property of the estate to creditors, a debtor may claim certain property as statutorily exempt under § 522 by choosing either state or federal exemptions. 11 U.S.C. § 522(b); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992). Federal Rule of Bankruptcy Procedure 4003(b) ("FED. R. BANKR. P." or "Rule") affords a creditor or a bankruptcy trustee the opportunity to object to claimed exemptions within 30 days of the initial § 341 meeting of creditors. FED. R. BANKR. P. 4003(b)(1). Unless a party in interest objects to a claim of exemption within the time permitted under Rule 4003, the property becomes exempt and is no longer property of the estate. 11 U.S.C. § 522(l); *Taylor*, 503 U.S. at 642-43. A court has no authority to limit the application of § 522(l) to exemptions claimed in good faith. *Id.* Rule 4003(c) provides that the objecting party bears the burden of proof and must show by a

preponderance of the evidence that a claimed exemption was improper. FED. R. BANKR. P. 4003(c); *see DiStefano v. Endurance Am. Ins. Co.*, 620 B.R. 687, 691 (N.D.N.Y. 2020) (citations omitted).

To facilitate a debtor's fresh start, a debtor may exempt certain property from the bankruptcy estate under federal or state law. 11 U.S.C. § 522(b). Some exemptions limit the exemption amount claimed under state law or under the federal exemptions specified in § 522(d). *Schwab v. Reilly*, 560 U.S. 770, 774 (2010); *Taylor*, 503 U.S. at 642. In this case, Debtors elected their exemptions under § 522(d), the federal scheme of exemptions. Under § 522(d)(5), which is often referred to as the "wildcard" or "catchall" exemption, a debtor is permitted to remove from the bankruptcy estate whatever property the debtor wants, provided the aggregate value of the items selected does not exceed a maximum amount authorized under that subsection. *Schwab*, 560 U.S. at 775; *Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006); *In re Eldridge*, 15 B.R. 594, 595 (Bankr. S.D.N.Y. 1981). At the time Debtors filed this chapter 13 case, each Debtor was allowed a wildcard exemption of $1,325.00, plus up to $12,575.00 of the unused portion of their homestead exemption. 11 U.S.C. § 522(d)(5). As the beneficiary of her deceased brother's estate, only Debtor Wife may claim an exemption in the Inheritance under § 522(d)(5). *See In re Schapiro*, 246 B.R. 751, 752 (Bankr. W.D.N.Y. 2000) (having a right to cash exemption under N.Y. Debt. & Cred. Law § 283(2), only chapter 7 debtor wife could claim exemption as a beneficiary to the cash).

Although the Trustee timely filed his Objection to Exemption within 30 days after the conclusion of the § 341 meeting of creditors as required under Rule 4003(b), he did not provide evidence to support his position that the Inheritance claimed as exempt is not a valid exemption. Instead, he simply states the "potential inheritance…is not an allowed exemption" in his

objection. (Objection to Exemption, 1. ECF No. 21.) Debtors did not oppose the Objection to

Exemption pursuant to Rule 4003(b)(1).[5]

Taking into consideration the "wildcard exemption" can be used to protect any kind of

property up to a certain amount, (*see Schwab v. Riley*, 560 U.S. 770, 775 (2010) (permitting

debtor's aggregate interest in any property); *In re Jaramillo*, 2020 Bankr. LEXIS 1024 (Bankr.

D.N.M. Apr. 14, 2020) (quoting *Vaillancourt v. Granite Group (In re Vaillancourt)*, 260 B.R. 66,

71 (Bankr. D.N.H. 2001))), coupled with the fact the Trustee's Objection to Exemption lacks a

basis upon which relief can be granted, the Court finds the Trustee failed to carry his burden

under Rule 4003(b)(1) and his Objection to Exemption is overruled. Because Schedule C of the

petition apprised the Trustee that Debtor Wife seeks to exempt the Inheritance in the sum of

$10,000 however, to the extent the amount received exceeds the amount permitted under

§§ 522(d)(5) and 522(l), those funds must be funded into the plan.

**B. Section 522(c)**

Exemption statutes are remedial in nature and "ought to receive a liberal construction in

favor of the debtor." *Parrotte v. Sensenich (In re Parrotte)*, 22 F.3d 472, 474 (2d Cir. 1994); *see*

*also In re Glenn*, 430 B.R. 56, 58 (Bankr. N.D.N.Y. 2010) (exemptions are an essential part of a

debtor's fresh start in bankruptcy and must be construed liberally in favor of debtors). The Code

provides that chapters 1, 3, and 5 apply in a case under chapters 7, 11, 12 or 13. 11 U.S.C.

§ 103(a); *Transouth Fin. Corp. v. Paris*, 26 B.R. 184, 186 (W.D. Tenn. 1982) (as the legislative

history itself indicates, "the general provisions that apply no matter which chapter a case is filed

under are found in chapter 1, 3 and 5." (quoting S. REP. NO. 989, 95th Cong., 2d Sess. 28 (1978);

H. REP. NO. 595, 95th Cong., 1st Sess. 316 (1977))). "Congress apparently expressed its

---

[5] Based on Debtors failure to respond to the Trustee's Objection to Exemption, the Trustee "reserve[s] his right" to submit an order on default. (Trustee's Brief, 4 n.1. ECF No. 29.) As both the Objection to Exemption and Objection to Confirmation were placed squarely before the Court, the Court will not sanction said reservation of rights.

intention that exemptions function identically in Chapter 7 and Chapter 13 bankruptcies by placing the provision governing exemptions, § 522, in Chapter Five of the Code, entitled 'Creditors, Debtors and the Estate,' instead of placing a separate exemption provision in each chapter." *In re Graham*, 258 B.R. 286, 290 (Bankr. M.D. Fla. 2001).

In practice, however, exemptions serve a different purpose in a chapter 7 proceeding where all property except exempt property is liquidated by a trustee and the resulting cash is distributed to creditors. *See generally* 11 U.S.C. §§ 704(a)(1), 726. Under this chapter, in the absence of specified circumstances precluding a discharge, debtors who are individuals are released from liability for most prepetition debts. 11 U.S.C. § 727. Certain property may be exempted from the estate and thereby preserved for a debtor's own use after his discharge, including post-petition earnings. 11 U.S.C. §§ 522, 541(a)(6); *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176-77 (2d Cir. 2010). This protection is not relevant in a chapter 13 case. "Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors [under §§ 704(a)(1), 726], Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income." *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (citations omitted); *see also Harris v. Viegelahn*, 575 U.S. 510, 514 (2015) (chapter 13 "allows a debtor to retain his property if he proposes…a plan to repay his debts over a three-to-five-year period."). While the chapter choice determines the nature of a debtor's fresh start, this Court agrees that § 522(b) functions identically in chapter 7 and chapter 13 cases and protects property properly claimed as exempt. 11 U.S.C. § 522(l).

Section 522(c) defines the effect claiming an exemption has on the treatment of creditors, both before a case has commenced and after a discharge is entered. A debtor's fresh start is made

possible because § 522(c) provides that exempt property is not liable, during or after the case, for

any debt of the debtor that arose before the commencement of the case. Section 522(c) states in

relevant part, "[u]nless the case is dismissed, property exempted under this section is not liable

during or after the case for any debt of the debtor that arose, or that is determined under section

502 of this title as if such debt had arisen, before the commencement of the case." 11 U.S.C. §

522(c). If the bankruptcy case is dismissed, exempt property loses this protection. *In re Little*,

2006 Bankr. LEXIS 1010, at *7 (Bankr. N.D.N.Y. Apr. 24, 2006). Certain types of debts are

explicitly carved out under § 522(c) which may obligate a debtor to make "liable" his or her

exempt property for said prepetition debts. *Id.* These exceptions, not applicable here, are: "(1)

nondischargeable debts for taxes, custom duties, alimony, maintenance, and child support; (2)

debts secured by valid liens that may not be avoided under the trustee's powers and debts

secured by tax liens, if notice is properly filed; (3) certain nondischargeable debts for fraud and

willful injury owed to a federal depository institution's regulatory agency acting as a conservator,

receiver, or liquidating agent; and (4) a debt in connection with fraud in the obtaining or providing

of financial assistance for purposes of financing an education at an institution of higher

education." 11 U.S.C. § 522(c)(1-4); *Little*, 2006 Bankr. LEXIS 1010, at *7. These debts may be

enforced against exempt assets. Inheritances are not one of the delineated exceptions to property

that may become "liable" for debts that arose before the commencement of a case. Accordingly,

the Court finds that because the Inheritance is not one of the exceptions listed in § 522(c), it is

insulated from prepetition creditors' claims.[6] Given the Court has determined the Inheritance is

exempt up to a certain amount and that it is sheltered from creditors' prepetition claims under §

---

[6] Although the Court need not refer to the legislative history of § 522(c) because the statute's language is plain,
legislative history makes clear that this section was enacted to insulate exempt property from prepetition debts
unless the property is one of the exceptions listed in that subsection. *See S & C Home Loans, Inc. v. Farr (In re
Farr)*, 278 B.R. 171, 177 (B.A.P. 9th Cir. 2002) (citing S. REP. NO. 95-989, at 76 (1978); H. R. REP. NO. 95-595, at
361 (1977)).

522(c), it must now decide whether the Inheritance nonetheless constitutes "disposable income" for purposes of achieving confirmation under § 1325(b).

### C. Projected Disposable Income

Chapter 13 was designed to facilitate adjustment of the debts of individuals with regular income through flexible repayment plans funded primarily from future earnings or other future income. 11 U.S.C. § 1322(a)(1). A bankruptcy trustee oversees the filing and execution of a chapter 13 debtor's plan. *Id. See also* 28 U.S.C. § 586(a)(3). Although § 1322(b)(8) states the plan "may provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor," a debtor is not required to commit prepetition property to the repayment of prepetition debts. 11 U.S.C. § 1322(b)(8); *In re Brumm*, 344 B.R. 795, 802-03 (Bankr. N.D. W. Va. 2006). *See also McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410 (B.A.P. 9th Cir. 1999) (same); *In re Ash'Shadi*, 2005 Bankr. LEXIS 790, at *3 (Bankr. E.D. Mich. May 6, 2005) ("Postpetition disposable income does not include prepetition property or its proceeds. This is the chapter 13 debtor's bargain. Creditors of a chapter 13 debtor have no claim to any of these assets.").

To gain confirmation of a plan, § 1325 specifies circumstances under which a bankruptcy court "shall" and "may not" confirm a plan. 11 U.S.C. §§ 1325(a), (b). Under § 1325(a)(4), the court shall confirm the chapter plan if it provides that, as of the effective date of the plan, the value of property to be distributed under the plan to unsecured creditors will not be less than the amount unsecured creditors would receive if debtor's estate were liquidated in a chapter 7 proceeding. 11 U.S.C. § 1325(a)(4). This confirmation requirement is often termed the "best interests of creditors" or "ability to pay" test; it allows a chapter 13 debtor "to retain non-exempt equity by effectively buying such equity on the 'installment plan,'" which allows a debtor to

retain property that would otherwise have to be surrendered in a chapter 7 proceeding. *In re Moglia*, 2014 Bankr. LEXIS 5197, at *11 (Bankr. D. Or. Dec. 30, 2014). The "best interests of creditors" test serves as a floor because it is the minimum amount unsecured creditors are to be paid in a chapter 13. *Id.* at *10.

Section 1325(b) only comes into play when the chapter 13 trustee or the holder of an allowed unsecured claim objects to confirmation of the plan pursuant to § 1325(b)(1). 11 U.S.C. § 1325(b)(1). In relevant part, if the plan does not propose to pay unsecured creditors in full, the court may not confirm the plan unless, as of the effective date of the plan, the plan provides that "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). A debtor's projected disposable income to be paid in during the applicable commitment period is known as the "best efforts" test, and in contrast to the "best interests of creditors" test under § 1325(a)(4), functions as a ceiling. *Id.* The "best efforts" test ensures that a plan is feasible and that a debtor will pay unsecured creditors more than the "best interests of creditor's test" requires if the debtor is able to do so. The two tests are not cumulative; rather, each test must be satisfied to achieve confirmation. *Id.* If a debtor can pay more than the "best interest of creditor's test" requires, then § 1325(b) makes certain that the debtor will pay what he is able to. *Id. See also Ransom v. Fia Card Servs., N.A.*, 562 U.S. 61, 71 (2011) (With the enactment of BAPCPA (Bankruptcy Abuse Prevention and Consumer Protection Act) in 2005, "Congress designed the means test to measure debtors' disposable income and, in that way, to ensure that [they] repay creditors the maximum they can afford.").

Although the Code does not define "projected disposable income," it defines "disposable

income" for below median debtors like Debtors as

> .…current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended...for the maintenance and support of the debtor or a dependent of the debtor.…

11 U.S.C. § 1325(b)(2)(A)(i). Under this subsection, child support, foster care and disability payments are not considered in calculating a debtor's current monthly income ("CMI").

"Current monthly income" in turn is defined in § 101 as the debtor's "average monthly income" that the debtor or joint debtors receive from all sources for the six-month period ending on the last day of the calendar month immediately preceding the filing. 11 U.S.C. § 101(10A). A debtor's income is calculated without regard to whether such income is taxable income,[7] and "includes any amount paid by any entity on a regular basis for the household expenses of the debtor and debtor's dependents." *Id*. Although termed "current monthly income," this average monthly income calculation is expressly backward looking rather than "current." Section 101(10A)(B) then specifically excludes from the definition of CMI the following sources of income: Social Security benefits, payments to victims of war crimes, payments to victims of international or domestic terrorism, any monthly compensation, pension, pay, annuity or allowance in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services (with certain exceptions that are not applicable here). 11 U.S.C. § 101(10A)(B)(ii)(I-IV). In addition to the exclusions provided in § 1325(b)(1)(A), these sources of monthly income are not considered in calculating a debtor's current monthly income. *See, e.g.*, *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1318 (10th Cir. 2012) (holding that the debtor's projected disposable income is calculated using his

---

[7] Inheritances can be received in the form of money, real estate, personal items or a combination of assets, and are not included in the calculation of gross income, and therefore are not taxed unless they generate income. *See* 26 U.S.C. § 102(a) (gross income "does not included property acquired by gift, bequest, devise or inheritance.").

disposable income and therefore need not include his Social Security income, which is expressly excluded from disposable income); *In re Bartelini*, 434 B.R. 285 (Bankr. N.D.N.Y. 2010) (holding that debtors could not be compelled to include their Social Security income in their computation of disposable income or projected disposable income given § 101(10A)'s exclusion of Social Security income from the term "current monthly income"). Again, inheritances are not excluded from the definition of CMI.

Although not defined in the Code, the term "projected" was examined by the Supreme Court of the United States in *Hamilton v. Lanning*, 560 U.S. 505 (2010). In examining the two prevailing methods of calculating a debtor's projected disposable income, the Supreme Court noted that the average of a debtor's monthly disposable income during the six months preceding the commencement of the case multiplied by the number of months in the debtor's plan was in most cases all that was required. *Lanning*, 560 U.S. at 519. The Supreme Court concluded, however, that the forward-looking approach, rather than the mechanical approach, is the correct method for calculating a debtor's projected disposable income because it accounts for changes in the debtor's financial circumstances that are "known or virtually certain at the time of confirmation." *Id.* at 524. The Court further observed that § 1325(b)(1)(B)'s projected disposable income language "to be received in the applicable commitment period" and which "will be applied to make payments," also favored the forward-looking approach which contemplates "that the debtor will actually pay creditors in the calculated monthly amounts." *Id.* at 518-19. While it is certain that Debtor Wife will receive the Inheritance during the plan term, it is not property that will actually pay Debtors' creditors in "calculated monthly payments."

### D. The Interplay of the Sections 522 and 1325

Courts are divided on the issue of whether an exempt asset should be included as disposable income. The Trustee asks this Court to follow the majority line of cases that hold exempt income must be included in the disposable income calculation. These courts base their decision on the "plain language" of § 1325(b) and a distinction between the role that exemptions play in chapter 7 as compared to chapter 13. *See In re Launza*, 337 B.R. 286, 289 (Bankr. N.D. Tex. 2005) (collecting cases). The majority courts reason that a plain reading of § 1325(b) does not lead one to conclude that disposable income is limited by § 522(c). *Id.* at 291 (holding exempt prepetition proceeds constitute income not reasonably necessary for Debtors' maintenance or support within the meaning of § 1325(b)). These courts conclude that since § 1325(b) does not qualify income by reference to its exempt status, exempt property must be part of the disposable income calculation to the extent the exempt income is not reasonably necessary for the maintenance and support of the debtor or the debtor's dependents. *See Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997) ("Chapter 13 contains no language suggesting that exempt [monthly] post-petition [workers' compensation] revenues are not Chapter 13 'income,'…to mean income not needed for debtor's support."); *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 480 (6th Cir. 1996) ("The plain language of [§ 1325(b)] makes no express or implied reference to the exempt status of income under state law."); *In re Tolliver*, 257 B.R. 98, 100 (Bankr. M.D. Fla. 2000) ("…the plain language of § 1325(b), which does not exclude or include income on the basis of its exempt or non-exempt status … [means the workers compensation proceeds] must be considered in a court's determination of whether the disposable income test is satisfied."); *In re Minor*, 177 B.R. 576, 582 (Bankr. E.D. Tenn. 1995) ("[Section] 1325(b), in defining disposable income, makes no

exception for exempt income."). These courts hold that nothing in § 1325(b) requires the source of income be taken into account in determining disposable income because § 1325(b) does not exclude or include income on the basis of its exempt or non-exempt status.

Behind some majority decisions also lies a policy consideration that exemptions play a less significant role in a chapter 13. *Launza*, 337 B.R. at 290 (citing *Koch*, 109 F.3d at 1289 ("In a Chapter 13 proceeding….[the] Debtor's fresh start is not endangered by a requirement that income received during the life of the plan from otherwise exempt sources be included in the calculation of disposable income.")); *Tolliver*, 257 B.R. at 100 ("because the fresh start in Chapter 13 is protected by a debtor's ability to retain non-disposable income rather that exempt assets the importance of exemptions is diminished." (citing *In re Schnabel*, 153 B.R. 809, 817 (Bankr. N.D. Ill. 1993))). Finally, some majority courts reason the broader discharge provisions of chapter 13 justifies a broader reading of disposable income to include exempt income. The case that is the origin for most majority opinions is *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993). In *Schnabel*, the court stated "[to allow a debtor] to use his exempt income to attain Chapter 13's broad discharge, without the corollary requirement to use it to pay creditors as much as he is able, would contravene the express purpose of the statute-namely, that the debtor make payments under a plan." *Schnabel*, 153 B.R. at 817 (finding the exempt status of Social Security and pension benefits immaterial to confirmation and § 1325(b)'s disposable income test to the extent not reasonably necessary for debtor's maintenance and support). The majority courts conclude that exempt income must be considered in the projected disposable income analysis under § 1325(b) to the extent the monthly exempt income is not reasonably necessary for the maintenance or support of debtor or debtor's dependents.

Since the enactment of BAPCPA, several courts have found that the "split of authority

over whether or not exempt assets are to be included in the calculation of disposable income has been statutorily answered by Congress." *In re Adamson*, 615 B.R. 303, 311 (Bankr. D. Colo. 2020) (quoting *In re Waters*, 384 B.R. 432, 436 (Bankr. N.D. W. Va. 2008)) (following pre-2005 majority view holding net proceeds from personal injury recovery should generally be included in the calculation of a debtor's projected disposable income); *In re Brah*, 562 B.R. 922, 924 (Bankr. E.D. Wis. 2017) (citations omitted) (debtor's exempt monthly VA benefits must be included in current monthly income and the calculation of projected disposable income); *In re Andrade*, 2011 Bankr. LEXIS 1637, at *8 (Bankr. D.R.I. Mar. 16, 2011) (tax refunds not reasonably necessary for debtor's maintenance and support must be included as disposable income); *In re Royal*, 397 B.R. 88, 101-02 (Bankr. N.D. Ill. 2008) ("Although both the disposable income definition and the current monthly income definition exclude certain items, exempt earned income credit income is not excluded."); *In re Waters*, 384 B.R. at 438 (veteran's disability benefits are "income" and had to be included in debtor's calculation of current monthly income regardless of exempt status, given the benefits are received in a monthly benefit check). The majority *Koch*, *Freeman*, *Tolliver*, *Minor*, and *Schnabel* decisions, however, fail to analyze the interplay between §§ 522(c) and 1325(b)(2).

Debtors in turn ask this Court to follow the minority line of bankruptcy court decisions that read § 1325(b) in conjunction with § 522(c) and find that the plain language of § 522(c) protects exempt property from prepetition debts. These courts hold that prepetition exempt property is excluded from the disposable income calculation. *See In re Krapf*, 355 B.R. 545, 547 (Bankr. D.S.C. 2006) (exempt workers' compensation settlement allocated for future surgery and for anticipated loss of income due to work related injuries not income and by definition not disposable income under § 1325(b)) (collecting cases). In *In re Ferretti*, 203 B.R. 796, 800

(Bankr. S.D. Fla. 1996), the court emphasized the interplay between § 522(c) and § 1325(b)(2) as follows:

> [t]he clear language of 11 U.S.C. § 522(c) protects exempt property, regardless of form, from pre-petition debts. This express limitation cannot be ignored for purposes of defining disposable income under 11 U.S.C. § 1325(b)(2). To include exempt property within the parameters of 11 U.S.C. § 1325(b)(2) directly conflicts with 11 U.S.C. § 522(c).

Based on its analysis of these two sections, the *Ferretti* court concluded that § 522(c) "essentially immunizes exempt property against any liability for pre-petition debts." *Ferretti*, 203 B.R at 800 (quoting *Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995)); *see also Berger v. Pokela (In re Berger)*, 61 F.3d 624, 627 (8th Cir. 1995) (finding in a chapter 12 case that exempt life insurance proceeds are not part of disposable income); *In re Baker*, 194 B.R. 881, 885 (Bankr. S.D. Cal. 1996) (exempt proceeds of property which is not "regular income" is not to be considered in calculation of disposable income in chapter 13 matters); *Huisinga v. Koch (In re Koch)*, 187 B.R. 664, 668 (Bankr. D.S.D. 1995) (exempt worker's compensations benefits not included in disposable income calculation); *In re Tomasso*, 98 B.R. 513, 515-16 (Bankr. S.D. Cal. 1989) (holding that only the non-exempt portion of a personal injury settlement constitutes disposable income).

Two circuit courts have held that an exempt asset is not part of the disposable income calculation. In doing so, the Fourth Circuit recognized the distinction between prepetition property and post-petition property in a pre-BAPCPA case, and accordingly held that funds within an exempt IRA would not be included as part of debtor's disposable income calculation. *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1130 (4th Cir. 1995). The Eleventh Circuit has held that based on the plain language of § 522(c), exempt prepetition property is not included in the disposable income calculation. *Gamble v. Brown (In re Gamble)*, 168 F.3d 442,

444 (11th Cir. 1999) (the plain language of § 522(c) mandates that properly exempted equity in real property is no longer part of the bankruptcy estate and is available for debtor's use). Several courts have followed *Gamble* and hold that exempt property is not included in a debtor's disposable income analysis. *See In re Daniels*, 2013 Bankr. LEXIS 351 (Bankr. E.D.N.C. Jan. 29, 2013) (prepetition exempt property, once properly exempted, is no longer property of the estate); *In re McCollum*, 348 B.R. 377, 388 (Bankr. E.D. La. 2006) (exempt property excluded from the calculation of the amounts required to be paid under a plan); *In re Graham*, 258 B.R. 286, 289 (Bankr. M.D. Fla. 2001) (properly exempted prepetition personal injury settlement cannot be held "liable" for prepetition debts under 11 U.S.C. § 522(c)); *In re Hunton*, 253 B.R. 580, 582-83 (Bankr. N.D. Ga. 2000) (holding properly exempted personal injury cause of action did not constitute "disposable income" under § 1325(b) and would not have to be devoted to payments under the plan). Once these minority courts determine that property is exempt, the disposable income analysis under § 1325(b) ends.

Debtors direct the Court's attention to certain minority bankruptcy court decisions that focus on whether the pre-petition asset claimed as exempt produces income or provides a stream of revenue. Based on this characteristic alone, these courts conclude that a non-income producing asset is not property that is part of a debtor's disposable income calculation. *In re Daniels*, 2018 Bankr. LEXIS 3029, at *18 (Bankr. E.D. Va. Oct. 1, 2018) (holding proceeds from sale of prepetition exempt tenants by the entirety property was not included in debtors' current monthly income); *In re Mobley*, 2011 Bankr. LEXIS 4565, at *6 (Bankr. E.D. Mich. Dec. 1, 2011) (holding proceeds from a personal injury lawsuit received prepetition and fully exempted were not disposable income); *In re Breeding*, 366 B.R. 21, 25 (Bankr. E.D. Ark. 2007) (holding the debtor's post-petition redemption of two exempt certificates of deposit

(CDs) owned prepetition did not generate income of any kind, much less "disposable income,"
that had to be committed to the plan). For these courts, if the exempt prepetition asset does not
produce income or revenue, it is not part of the disposable income analysis.

### E. Debtor Wife's Inheritance

The Court now turns to the instant matter. In discerning the meaning of the Code
sections at issue, the Court must begin its inquiry with the language of the statute itself. *United
States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citing *Landreth Timber Co. v.
Landreth*, 471 U.S. 681, 685 (1985)). If the statute is plain on its face, further inquiry is not
warranted unless the plain meaning demonstrably contradicts the intention of its drafters. *Id.* In
determining whether Congress has specifically addressed the question at issue, a reviewing
court should not confine itself to examining a particular statutory provision in isolation. The
meaning -- or ambiguity -- of certain words or phrases may only become evident when placed
in context. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of
definitional possibilities but of statutory context"). It is a "fundamental canon of statutory
construction that the words of a statute must be read in their context and with a view to their
place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 492 (2015) (quoting *Util.
Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014)).

The language of § 522 is plain - properly exempted prepetition property will not be
held liable for prepetition debts. A plain reading of this section excepts certain prepetition
assets that may be liable for prepetition debts. An inheritance is not one of § 522(c)'s
exceptions. As such, Debtor Wife's Inheritance is insulated from creditors' reach in
satisfaction of her prepetition debts. *Law v. Siegel*, 571 U.S 415, 424 (2014) (holding the
chapter 7 trustee was precluded from surcharging the debtor's exempt property, even where the

debtor was guilty of egregiously bad conduct). Although the issue in *Siegel* involved a chapter 7 debtor, the Supreme Court made clear, courts do not have "discretion to grant or withhold exemptions based on whatever conditions they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt….[and] the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Id.* at 423-24. The majority courts advance the idea that the language of § 1325(b) provides such a statutory basis, based on the definition of CMI. These courts, however, generally focus on post-petition income or revenues not yet earned. *See Daniels*, 2018 Bankr. LEXIS 3029, at \*14. This Court declines to follow the majority view and term the Inheritance "disposable income" because it is not income or revenue that Debtor Wife will receive "on a regular basis" as envisioned by the "best efforts" test. The Court will not alter its character as a prepetition asset properly claimed as exempt to one of "income."

The Court's conclusion is further supported by the plain language of § 1322(a)(1). This section mandates that a chapter 13 plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Notably, the plain language of this provision uses the word "future" twice. There is no reference to prepetition assets, exempt or otherwise. Furthermore, it is not contemplated that Debtor Wife will "actually pay creditors [the Inheritance] in the calculated monthly amounts." *Hamilton v. Lanning*, 560 U.S. at 518-19. Although the Trustee does not seek to "surcharge" the Inheritance, the practical effect of morphing the Inheritance into a source of revenue or income would be the same. *Siegel*, 571 U.S. at 422; *Daniels*, 2018 Bankr. LEXIS 3029, at \*10. Such a reading of § 1325(b) does not harmonize the section with the Code's broader regulatory

scheme, which takes into account § 522(c). The Inheritance simply does not relate, conceptually or otherwise, to income, much less future income.

For these reasons, this Court aligns itself with the minority bankruptcy court decisions that advance the analysis that "if the exempt asset in question is an anticipated stream of payments, it is included in projected disposable income; if the exempt asset is other than a stream of payments, it is not included." *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 411 (B.A.P. 9th Cir. 1999). As the court in *Daniels* aptly noted, "there is a meaningful difference in Chapter 13 between prepetition exempt property…and post-petition income that otherwise might be" from an exempt source. *Daniels*, 2018 Bankr. LEXIS 3029, at *14; *see also Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1130 (4th Cir. 1995) (funds held within exempt IRAs not included in disposable income); *Berger v. Pokela (In re Berger)*, 61 F.3d 624, 627 (8th Cir. 1995) (finding in chapter 12 case that exempt life insurance proceeds are not part of disposable income); *Huisinga v. Koch (In re Koch)*, 187 B.R. 664, 668 (Bankr. D.S.D. 1995) (exempt workers compensation benefits not included in disposable income calculation); *In re Baker*, 194 B.R. 881, 885 (Bankr. S.D. Cal. 1986) (exempt funds or property which is not "regular income" is not considered in calculation of disposable income in chapter 13 matters). The minority courts focus is on protecting properly exempted property received prepetition. Section 1325(b) reveals no conflict with the application of § 522(c) to chapter 13 due to § 103(a). To find that the majority line of reasoning applies to a properly exempted prepetition asset, would place this Court in a position of ignoring the clear congressional intent of § 522(c). While the Trustee may prefer the majority's interpretation of § 1325(b), this Court believes that such interpretation lies with the legislature, not the

judicial branch.[8] To require a chapter 13 debtor to surrender property specifically made unavailable to creditors by state or Federal law is contrary to §§ 522(c) and 522(l). It would also leave a chapter 13 debtor with no property to exempt. In this Court's opinion, Congress did not intend to change the disposable income analysis in BAPCPA in this way. Rather, the disposable income test remains based on income, not prepetition exempt property. *See* §§ 1325(b), 101(10A).

This Court agrees that there is a meaningful distinction between Debtor Wife properly claiming the Inheritance as exempt prepetition property, as compared to a debtor who is receiving post-petition income or revenue from an otherwise exempt source during the term of the plan not specifically excepted under §§ 1325(b) or 101(10A). The Court's conclusion respects the Supreme Court's holdings in *Taylor*, *Lanning*, and *Siegel*, and it strikes a balance between Congress's intent to allow exempt property to remain exempt and its intent to include a debtor's post-petition income in CMI that otherwise is not excluded.

With that said, the Court finds that the value of the Inheritance is implicated, if at all, by the "best interests of creditors" or "ability to pay" test found in § 1325(a)(4). *See, e.g.*, *In re Lombardi*, 551 B.R. 84 (Bankr. D. Mass. 2016); *In re Roberts*, 514 B.R. 358, 360 (Bankr. E.D.N.Y. 2014). The Inheritance is "not 'income' to be factored into a monthly disposable income test, but rather [it is] an asset to be included in the liquidation." *Roberts*, 514 B.R. at

---

[8] Congress knows how to limit a debtor's compensation for reasonably necessary support when it wants to. *See, e.g.*, *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010) (concluding the bankruptcy and district courts properly interpreted "future" in § 522(d)(11)(E) as looking forward from the date of the bankruptcy filing). Section 522(d)(11)(E) provides:

> The following property may be exempted under subsection (b)(2) of this section:…
>> (ii) The debtor's right to receive, or property that is traceable to --
>>> (E) a payment in compensation of loss of future earnings of the debtor…to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

11 U.S.C. § 522(d)(11)(E). Congress did not place a separate exemption provision in chapter 13 or add language to § 522(d) in 2005 to limit a chapter 13 debtor's ability to retain an exempt prepetition asset not reasonably necessary for debtor's maintenance and support.

360. In the event Debtor Wife receives a sum of money from her brother's estate that exceeds the total amount permitted in § 522(d)(5), that excess must be remitted to the Trustee for payment to creditors.

## **CONCLUSION**

For the reasons stated herein, the Court holds that Debtor Wife properly claimed the Inheritance as an exempt prepetition asset and that it is immunized from prepetition debts and allowed creditors' claims up to the value authorized under § 522(d)(5). The Court further concludes the Inheritance does not constitute "disposable income" as envisioned under § 1325(b).

Accordingly, it is hereby

ORDERED, that Trustee's Objection to Exemption and Objection to Confirmation are overruled, and it is further

ORDERED, that Debtor Wife remit any Inheritance funds received in excess of the amount permitted under § 522(d)(5), and it is further

ORDERED, that the Confirmation hearing be restored to the Court's Southern Tier calendar to be held at 10:30 a.m. on August 2, 2022.

###